# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FAIR HOUSING PARTNERSHIP OF | ) | |
| GREATER PITTSBURGH, INC. *et al.*, | ) | Civil Action No. 23-742 (GBW) |
| | ) | |
| Plaintiffs-Intervenors, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AION MANAGEMENT, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Claudia L. Pare, U.S. DEPARTMENT OF JUSTICE, Wilmington, DE; Kristen Clarke, Carrie Pagnucco, Megan K. Whyte De Vasquez, Jasmin Lott, Lori K. Wagner, U.S DEPARTMENT OF JUSTICE, Washington, DC – Attorneys for Plaintiff

John S. Whitelaw, COMMUNITY LEGAL AID SOCIETY, Wilmington, DE; Joseph J. Wardenski, WARDENSKI, P.C., New York, NY; Morgan Williams, D. Scott Chang, NATIONAL FAIR HOUSING ALLIANCE, Washington, DC– Attorneys for Plaintiffs-Intervenors

James E. Huggett, MARGOLIS EDELSTEIN, Wilmington, DE; Emily E. Mahler, MARGOLIS EDELSTEIN, Pittsburgh, PA – Attorneys for Defendants

March 18, 2025
Wilmington, Delaware

**WILLIAMS, U.S. DISTRICT JUDGE:**

Presently before the Court are Defendants' Motion to Dismiss Plaintiff's Amended Complaint (D.I. 23) and Defendants' Motion to Dismiss Plaintiff-Intervenors' Complaint (D.I. 25). The Court has carefully reviewed both motions and Defendants' opening briefs (D.I. 24; D.I. 26), Plaintiff's and Plaintiffs-Intervenors' respective answering briefs (D.I. 28; D.I. 29), Defendants' reply briefs (D.I. 30; D.I. 31), and the relevant law. For the reasons explained below, Defendants' Motion to Dismiss Plaintiff's Amended Complaint (D.I. 23) is DENIED and Defendants' Motion to Dismiss Plaintiff-Intervenors' Complaint (D.I. 25) is DENIED.

## I.  **BACKGROUND**

The United States of America ("the United States" or "Plaintiff") and the Fair Housing Partnership of Greater Pittsburgh, Inc., the Housing Equality Center of Pennsylvania, and the National Fair Housing Alliance (collectively, "Intervenors") sue Defendants AION Management, LLC, Leland Point Owner LP, AP Cosmopolitan LLC, AP Greenspring LLC, AP Livingstone LLC, AION University Village, LLC, AP East Pointe, LLC and AP Hunters Crossing, LLC (collectively, "Defendants") for violations of the Fair Housing Act ("the FHA"), 42 U.S.C. § 3610 *et seq.* (D.I. 12; D.I. 22).

Defendant AION Management, LLC ("AION") is a property management company with a principal place of business in Delaware. (D.I. 12 ¶ 5). AION manages the following properties: (1) Alden South Hills Apartment Homes, which is owned by Leland Point Owner, LP; (2) Cosmopolitan Apartment Homes, which is owned by AP Cosmopolitan, LLC, (3) Greenspring Apartment Homes, which is owned by AP Greenspring, LLC, (4) Livingstone Apartment Homes, which is owned by AP Livingstone, LLC, (5) Liberty Pointe Apartment Homes, which is owned by AION University Village, LLC, (6) Hillside Pointe Apartment Homes, which is owned by AP East Pointe, LLC, and (7) Hunters Crossing Apartment Homes, which is owned by AP Hunters

Crossing, LLC (each individually, "the Subject Property," or collectively, "the Subject Properties"). (*Id.* ¶¶ 6-12).

The Fair Housing Partnership of Greater Pittsburgh ("FHP"), the Housing Equality Center of Pennsylvania ("HECP"), and the National Fair Housing Alliance ("NFHA") are organizations dedicated to promoting fair housing advocacy and enforcement (together, "the Organizations" or "Intervenors"). (D.I. 22 ¶¶ 13-15). In 2019, FHP received a report of a tenant with a disability who was allegedly forced to move out of an AION property after the tenant's request for a reasonable accommodation for the tenant's disability was denied. (*Id.* ¶ 24). As a result, in early 2020, the Organizations began a joint investigation into the Subject Properties' reasonable accommodation practices. (D.I. 12 ¶ 18). More specifically, the Organizations "sought to determine if Defendants were making units available to tenants or applicants who have a disability-related need for an assigned parking space." (*Id.*). Throughout 2020, the Organizations deployed testers[1] who sought to obtain assigned parking spaces from the Subject Properties. "Defendants told testers that they would not assign parking spaces to tenants with disabilities" and "no AION employee responded to a tester's reasonable accommodation request by asking questions about the tester's or their family member's individual needs or circumstances." (*Id.* ¶ 19). Due to Defendants' alleged actions and "policies," the Organizations' missions were frustrated, and the Organizations diverted their time and resources to counteract Defendants' actions. (*See id.* ¶¶ 40-41; *see also* D.I. 22 ¶¶ 62-66).

On April 7, 2021, the Organizations filed a complaint with the United States Department of Housing and Urban Development ("HUD"). (D.I. 12 ¶ 42). The Secretary of HUD

---

[1]    "'Testers' are individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful [housing] practices." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982).

investigated the complaint and determined that reasonable cause existed to believe that Defendants

had violated several provisions of the FHA.   Accordingly, on February 24, 2023, the Secretary of

HUD issued a Charge of Discrimination ("the Charge") alleging violations of 42 U.S.C. §§

3604(c), 3604(f)(1), 3604(f)(2), and 3604(f)(3)(B) and their implementing regulations.   (*Id.* ¶ 44).

Pursuant to 42 U.S.C § 3612(a) and § 3612(o)(1), Defendants elected to resolve the Charge through

civil action in a federal district court.   Defendants and the United States also entered into a tolling

agreement that extended the deadline for tolling to July 7, 2023.   (*Id.* ¶ 46).   On that date, the

United States filed its initial complaint.

Relevant here, on October 10, 2023, the United States filed a First Amended Complaint

("the FAC") (D.I. 12).   The FAC alleges violations of 42 U.S.C. §§ 3604(c), 3604(f)(1),

3604(f)(2), and 3604(f)(3)(B).   (*Id.* ¶ 48).   The United States seeks a declaration, an injunction,

an award of money damages, and any other award as the interests of justice may require.   (*Id.* at

15).

On November 29, 2023, the Organizations filed a Motion to Intervene (D.I. 16) and, on

February 22, 2024, the Court granted the Motion to Intervene.   (D.I. 20).   The Intervenors filed

a complaint on February 23, 2024 (D.I. 22) ("the Intervenors' Complaint").   The Intervenors'

Complaint likewise alleges violations of 42 U.S.C. §§ 3604(c), 3604(f)(1), 3604(f)(2), and

3604(f)(3)(B).   (*Id.* ¶ 71).   The Intervenors seek a declaratory judgment, a permanent injunction,

compensatory damages, punitive damages, reasonable attorneys' fees and costs and any other

relief the Court deems just and equitable.   (*Id.* ¶¶ 22-23).

On March 7, 2024, Defendants filed a Motion to Dismiss the United States' FAC (D.I. 23)

and a Motion to Dismiss Plaintiff-Intervenors' Complaint (D.I. 25) (together, "the Motions to

Dismiss").   That same day, Defendants filed respective, corresponding Opening Briefs (D.I. 24;

D.I. 26).[2] On March 28, 2024, the United States filed an Answering Brief (D.I. 29) and the Intervenors' filed an Answering Brief (D.I. 28). On April 4, Defendants filed their respective Reply Briefs (D.I. 30; D.I. 31).

## II.    LEGAL STANDARD

Defendants move to dismiss the FAC and Intervenors' Complaint for a lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (D.I. 24 at 8-9; D.I. 26 at 8-9).

### A.    Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), a court may dismiss a complaint for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Standing is a matter of subject matter jurisdiction. Therefore, a motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1). *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

A challenge to subject matter jurisdiction under Rule 12(b)(1) is categorized as either a facial attack or a factual attack. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d. Cir. 2016). The distinction between a factual or facial attack is "significant because, among other things, it determines whether [the Court] accept[s] as true the non-moving party's facts as alleged in its pleadings." *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Wells Fargo*, 824 F.3d at 346 (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). In contrast, a factual attack "attacks the factual allegations underlying the complaint's

---

[2]    Defendants' Opening Briefs (D.I. 24; D.I. 26) and the arguments therein are essentially identical. In other words, Defendants repeat the exact same arguments for dismissal of both the FAC and Intervenors' Complaint, which also allege substantially similar facts and causes of action.

assertion of jurisdiction" and allows the Court to "weigh and consider evidence outside the pleadings." *Wells Fargo*, 824 F.3d at 346 (internal quotation marks omitted).

In this case, Defendants raise facial attacks to the United States' and Intervenors' standing. (*See* D.I. 24 at 13-21; D.I. 26 at 13-21). Accordingly, the Court must apply the same standard of review as it does on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

### B.    Fed. R. Civ. P 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a complaint must be dismissed if it "[fails] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must "set forth enough factual allegations to 'state a claim for relief that is plausible on its face.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When reviewing a motion to dismiss under Rule 12(b)(6), the Court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, the Court must construe all allegations and facts in the light most favorable to the non-movant plaintiff and resolve all reasonable inferences in the plaintiff's favor. *See Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005); *see also Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept "bald assertions," "unsupported conclusions," or "unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906, n.8 (3d Cir. 1997) (internal quotation marks omitted). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery

will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch., Inc.,* 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks and citations omitted).

### III.    ANALYSIS

Defendants make the same arguments to dismiss both the United States' FAC and Intervenors' Complaint. (*See* D.I. 24; D.I. 26). Defendants argue that dismissal is warranted because (1) the FAC and Intervenors' Complaint fail to establish Article III standing; (2) Defendants' alleged communications during the course of testing do not state a claim under 42 U.S.C. § 3604(c) ("Section 3604(c)"); and (3) the FAC and Intervenors' Complaint fail to state a claim for a violation of 42 U.S.C. § 3604(f)(3)(B) ("Section 3604(f)(3)(B)"). The Court will address each of Defendants' arguments in turn.

#### A.    The United States and Intervenors Possess Article III Standing

First, Defendants assert that the United States and Intervenors cannot demonstrate Article III standing. More specifically, Defendants contend that the United States and Intervenors have failed to sufficiently allege a cognizable injury in fact. (*See* D.I. 24 at 13). Conversely, the United States and Intervenors assert that their allegations of injury establish standing under well-established Supreme Court and Third Circuit precedent. (D.I. 29 at 12-18). The Court agrees with the United States and Intervenors.

#### 1.    Article III Standing

Article III of the U.S. Constitution limits the federal judicial authority to resolving "Cases" or "Controversies." U.S. Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case – in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks omitted). To establish standing, a plaintiff must demonstrate "(i) that she has suffered or likely will suffer an injury in

fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) ("*Alliance*"); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).    In other words, the triad of standing requires an injury in fact, causation, and redressability.

First, to establish an injury in fact, the plaintiff must show an invasion of a legally protected interest, which is concrete and particularized and actual or imminent. *Lujan*, 504 U.S. at 560. The injury cannot be conjectural, hypothetical, or speculative. *Id.*    Second, the plaintiff must establish causation.    Causation requires that the plaintiff's injury "was likely caused or likely will be caused by the defendant's conduct." *Alliance*, 602 U.S. at 382.    Accordingly, a plaintiff may not "manufacture" their own injury – there must be a chain linking defendant's conduct to plaintiff's harm. *Id.*    Third, and last, to demonstrate redressability, a plaintiff must show that the judicial relief requested will likely "cure" or mitigate their injury. *Lujan*, 504 U.S. at 561.

"The party invoking federal jurisdiction bears the burden of establishing the standing elements." *Id.*    Each standing element must be supported "with the manner and degree of evidence required at the successive stages of litigation." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024).    Accordingly, "[w]here, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016).; *see also Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal quotation marks and citation omitted).

2.    **Organizational Standing**

Similar to individuals, organizations may have standing to "sue on their own behalf for injuries they have sustained." *Havens Realty Corp. v. Coleman*, 455 U. S. 363, 379, at n. 19 (1982) ("*Havens*"). "In doing so, however, organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Alliance*, 602 U.S. at 394.

Historically, *Havens Realty Corp. v. Coleman* ("*Havens*"), was the seminal case on organizational standing. In *Havens*, a plaintiff housing rights organization, HOME, sued real estate-company defendants for engaging in racial steering by falsely informing Black prospective renters and HOME testers about available apartments. *Havens*, 455 U.S. at 368. The Supreme Court determined that Plaintiff HOME had suffered an Article III injury in fact because the defendants' illegal racial steering practices "perceptibly impaired HOME's ability to provide counseling and referral services." *Id.* at 379. The Supreme Court further explained that where an organization, like HOME, alleges a "concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources," then the organization has sufficiently plead Article III standing. *Id.*

In the years following the decision in *Havens*, courts fine-tuned the organizational standing doctrine. For example, the Third Circuit determined that "litigation expenses alone do not constitute damage sufficient to support standing"— i.e., "[a]n organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit." *Fair Hous. Council v. Montgomery Newspapers*, 141 F.3d 71 (3d Cir. 1998) ("*Montgomery Newspapers*"); *see also Fair Housing Council v. Main Line Times*, 141 F.3d 439, 442 (3d Cir. 1998) ("*Main Line Times*"). Similarly, the Ninth Circuit, added the requirement that an organizational plaintiff must "show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion De Trabajadores De Lake*

*Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) ("*Lake Forest*"); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285 (3d Cir. 2014) (adopting the "requirement" in *Lake Forest*). Nevertheless, an increasing number of courts began to express concerns about organizations creating "synthetic standing" through "[putting themselves] in the way of harm as a pretext to achieve standing." *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 120 (2d Cir. 2017) (J., Jacobs, dissenting); *see also SW Fair Hous. Council v. WG Scottsdale LLC*, No. 22-16345, 2023 U.S. App. LEXIS 27515, at *7-8 (9th Cir. Oct. 17, 2023) (J., Bumatay, concurring) (collecting cases).

As a result, in *FDA v. Alliance for Hippocratic Medicine* ("*Alliance*"), the Supreme Court clarifies the requirements for organizational standing:

> [A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way.
>
> [Plaintiffs] respond that under *Havens Realty Corp. v. Coleman*, standing exists when an organization diverts its resources in response to a defendant's actions. That is incorrect. Indeed, that theory would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies. *Havens* does not support such an expansive theory of standing.
>
> The relevant question in Havens was whether a housing counseling organization, HOME, had standing to bring a claim under the Fair Housing Act against Havens Realty, which owned and operated apartment complexes. [. . .] Critically, HOME not only was an issue-advocacy organization, but also operated a housing counseling service. And when Havens gave HOME's employees false information about apartment availability, HOME sued Havens because Havens "***perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers***." In other words, Havens's actions ***directly affected and interfered with HOME's core business activities***—not

> dissimilar to a retailer who sues a manufacturer for selling defective
> goods to the retailer.

*Alliance*, 602 U.S. at 394-395 (emphasis added).

Therefore, to be clear, the injury in fact standard from *Havens* still applies: an organizational plaintiff does have standing where a defendant "perceptibly impairs [its] ability to provide counselling and referral services" and where the defendant's actions "directly affect[ ] and interfere[ ] with [the organization's] core business activities." *Id.*; *see also Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 410 (4th Cir. 2024) (C.J., Diaz, concurring) (assessing the law after the decision in *Alliance*).

### 3. The Intervenors Have Sufficiently Alleged Standing

First, Defendants assert that the Intervenors' Complaint fails to demonstrate a cognizable injury in fact caused by the Defendants' alleged conduct. (D.I. 24 at 13). More specifically, Defendants aver that the Intervenors' Complaint fails to allege an "injury in the same fashion as the organization in *Havens*, as it fails to specify how the parking policy directly impeded any of the organizations' programs save for its alleged opposition to general, policy-oriented goals." *(Id.* at 15). Defendants' argument, however, is not supported by the allegations in the Intervenors' Complaint. The Intervenors allege the following:

> Defendants' unlawful actions have frustrated Plaintiffs-Intervenors'
> missions as fair housing organizations and forced them to divert
> their limited resources from their typical activities, which include a
> range of educational, investigative, counseling, and referral
> services.
>
> Instead of engaging in these usual activities that they otherwise
> would have performed, Defendants' unlawful housing practices
> forced Plaintiffs-Intervenors to identify and counteract Defendants'
> discriminatory actions . . .
>
> Because of the diversion of resources needed to respond to and
> counteract Defendants' unlawful action, Plaintiffs-Intervenors were

unable to engage in other mission-centric activities they had planned since 2019.

(D.I. 22 ¶¶ 63-65).

These allegations establish that Defendants' actions "directly affected and interfered with the [Intervenors'] core business activities" of providing fair housing-related services, which resulted in a "consequent drain on the [Intervenors'] resources." *Alliance*, 602 U.S. at 395; *Havens*, 455 U.S. at 379. The Intervenors further detail how each Intervenor Plaintiff was required to divert its respective resources. (*See* D.I. 22 ¶ 65(a)-(c) (specifically stating the diversions affecting FHP, HECP, and NFHA)). Illustratively, Intervenors FHP and NFHA were required to alter a "March 2021 webinar" and were "forced to delay or postpone fair housing investigations in other cities . . . because of funding and staff resources devoted to the investigation of Defendants." (*Id.*). In other words, Defendants' actions harmed Intervenors' ability to perform their work, which would have helped different parties in different cities. *Cf. Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285-86 (3d Cir. 2014) (finding a lack of standing where the plaintiff organization's "very purpose relates to actions directly involving [the defendant]" and "its very purpose was to expend resources to educate the public regarding the [specific defendant's] behavior."). These allegations "constitute far more than simply a setback to the organization's social interests." *Havens*, 455 U.S. at 379. Accordingly, the Court finds that Intervenors have sufficiently established an injury in fact caused by Defendants.

Despite the above allegations, Defendants attempt to analogize the Intervenors' allegations with those found to be insufficient to demonstrate an injury in fact and causation in *Montgomery Newspapers* and *Main Line Times*. The Court, however, does not find that either of those cases command dismissal here.

First, and most obvious, the stages at which the Third Circuit analyzed standing in *Montgomery Newspapers* and *Main Line Times* required markedly different hurdles for the respective plaintiffs to overcome. *Montgomery Newspapers* was decided on a motion for summary judgment and *Main Line Times* was decided on a motion for judgment as a matter law after the trial had occurred and a verdict had been rendered. In contrast, here, the Court is required to analyze Intervenors' standing at the motion to dismiss stage. (*See* D.I. 28 at 14-15). As stated above, at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561; *see also Montgomery Newspapers*, 141 F.4d at 76 (observing that the plaintiff organization's "damage allegations track the language in *Havens* are were sufficient to withstand a motion to dismiss, [but that] something more than these naked allegations was required at the summary judgment stage.").

Second, Intervenors' allegations do not run afoul of the standards espoused in *Montgomery Newspapers* or *Main Line Times*. In *Montgomery Newspapers*, the Third Circuit held that "litigation expenses *alone* do not constitute damage sufficient to support standing." 141 F.3d 71 at 79 (emphasis added) (citing to *Spann v. Colonial Village, Inc.*, 899 F.2d 24 (D.C. Cir. 1990)). As shown above, Intervenors clearly allege more than an injury from litigation expenses. (*See also* D.I. 29 at 16 (Plaintiff United States arguing same)). Equally distinguishable, in *Main Line Times*, the Third Circuit held that a plaintiff organization does not suffer an injury in fact if the alleged discrimination "was only *proven* to have been observed by persons who knew that it was illegal, i.e. the [plaintiff organization's] staff members." *Main Line Times*, 141 F.3d at 443 (internal quotation marks omitted) (emphasis added). Here, it is alleged that Intervenor FHP "received a report of a tenant with a disability who was allegedly forced to move out of an AION property in Pennsylvania by AION employees after the tenant's request for a reasonable

13

accommodation for the tenant's disability was denied." (D.I. 22 ¶ 24). This allegation therefore plausibly alleges that Defendants' conduct was impacting third parties. Further, in *Main Line Times*, the Third Circuit "faulted the plaintiff fair housing organization for failing to *prove* its allegations of injury through evidence" during the trial. (D.I. 28 at 14). However, at this stage, Intervenors do not need to "prove" anything – "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.

Therefore, in conclusion, the Court finds that the Intervenors have alleged a plausible injury in fact caused by Defendants' conduct, which would be redressed by relief from this Court. *See Sprint Communs. Co. v. APCC Servs., Inc.*, 544 U.S. 269, 288 (2008) (Finding that injury, causation, and redressability are "flip sides of the same coin."); *see also Alliance*, 602 U.S. at 381 ("If a defendant's action causes an injury, enjoining that action or awarding damages for the action will typically redress that injury."). As such, Intervenors have demonstrated Article III standing.

### 4. The United States Has Sufficiently Alleged Standing

Defendants also request that the Court "dismiss Plaintiff's Complaint, in its entirety, for lack of standing." (D.I. 24 at 18). Defendants' arguments are substantially similar, if not identical, to those made in their Motion to Dismiss the Intervenors' Complaint. (*Compare* D.I. 24 *with* D.I. 26). Like Intervenors, the United States asserts that its FAC has sufficiently alleged "cognizable injuries and pleads facts which, if proven, establish entitlement to relief." (D.I. 29 at 7). The United States additionally argues that it has statutory authority to pursue this action. (*See id.* at 11-12).

As a preliminary note, the Court and the parties observe that the United States' standing is intertwined with the Intervenors' standing. The United States brought this action pursuant to 42 U.S.C. § 3612(o) ("Section 3612(o)"). Under Section 3612(o), the Attorney General may commence and maintain a civil action "on behalf of [an] aggrieved person," which is defined to

include any person who "claims to have been injured by a discriminatory housing practice" or "believe that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3612(i). Therefore, under the statute, the United States must plausibly allege that Intervenors are "aggrieved persons," who claim to have been injured by Defendants' discriminatory housing practices, in order to maintain this lawsuit. (See D.I. 29 at 12). The United States has clearly done so in the FAC:

> FHP, HECP, and NFHA suffered injuries as a result of Defendants' actions. These injuries include, but are not limited to, diversion of resources from organizational activities that Complainants would have otherwise performed. Complainants trained and instructed testers regarding the testing of Defendants' properties; prepared and assigned tester profiles; planned, organized, and coordinated tests and appropriate follow-up tests; obtained reports from testers; and analyzed the information in the testers' reports. Because of this diversion of resources, Complainants were unable to engage in other activities they had planned, including taking steps to develop and disseminate resources to enhance their outreach capabilities; conducting additional testing and outreach in their service areas; developing grant proposals; and developing training curricula.

> Defendants' statements denying reasonable accommodations also frustrated the missions of FHP, HECP, and NFHA to promote and ensure equal access to housing, resulting in their need to expend resources to conduct additional education, outreach, and remediation activities to counteract Defendants' discriminatory conduct and correct any confusion or misunderstanding of the right to reasonable accommodations under fair housing laws throughout the region.

(D.I. 12 ¶¶ 40, 41).

Therefore, the United States has statutory authority, or so-called statutory standing, under Section 3612(o) to bring this action because it has plausibly alleged that Intervenors are "aggrieved persons" who were injured by Defendants' conduct. *See supra* Section III (A)(3).

The United States, however, seemingly conflates its statutory standing with its Article III standing. (*See* D.I. 29 at 11-12). Statutory standing is separate and distinct from Article III

standing. *See United States v. Catala*, 870 F.3d 6, 10 (1st Cir. 2017) ("Statutory standing is a horse of a different hue."). Unlike Article III standing, "statutory standing is not jurisdictional." *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (citing to *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388, 188 L. Ed. 2d 392 & n.4 (2014)). Rather, statutory standing concerns whether a plaintiff has been afforded the right to bring their claim. *Id.*; *see also Hartig Drug Co. v. Senju Pharm. Co.,* 836 F.3d 261 (3d Cir. 2016). Phrased differently, "[w]here statutory standing concerns a plaintiff's power to bring claims, Article III standing (which is one facet of subject matter jurisdiction) concerns our Court's power to hear them." *United States v. One 1962 Aero Twin Commander 500B*, No. 24-1277, 2025 WL 25853, 2025 U.S. App. LEXIS 105, at *5 (3d Cir. Jan. 3, 2025). Thus, the United States' contention that it has statutory authority to bring a claim under the FHA is correct, but it is misplaced in the context of Defendants' Article III standing argument.

Nevertheless, and undeniably, the United States suffers an Article III injury in fact when its laws are violated. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). The United States' FAC plausibly alleges that Defendants have violated various provisions of the FHA, which are federal laws. (*See* D.I. 12 ¶¶ 17-51). Accordingly, the United States has sufficiently alleged a cognizable Article III injury in fact, which was allegedly caused by Defendants' violation of its laws, and that can be redressed by this Court. In other words, the United States maintains Article III standing to prosecute this action.

### 5.    The Tester's Individual Standing is Not an Issue in this Action

In both Motions to Dismiss, Defendants contend that "Plaintiff['s] [and Intervenors'] "Testers" lack the automatic standing conferred to testers in *Havens Realty* given the language of §3604(f)." (D.I. 24 at 18; D.I. 26 at 18). Plaintiff and Intervenors respond that "Intervenors are the aggrieved parties seeking relief in this action, not the testers who participated in Intervenors'

investigation." (D.I. 28 at 14).   Plaintiff and Intervenors are correct.   Defendants fail to explain

to the Court why the testers' standing would be relevant in this action, and do not elaborate on this

argument in their corresponding Reply Briefs (D.I. 30; D.I. 31).   Unlike in *Havens*, the testers

have not joined as plaintiffs or intervenors in this action.   Therefore, the Court need not address,

and will not address, the theoretical standing of any non-party, including the testers.

### B.    The FAC and Intervenors' Complaints State Claims Under Section 3604(c)

Next, Defendants argue that the United States and the Intervenors fail to state claims under

42 U.S.C. § 3604(c) ("Section 3604(c)").   The Court disagrees.

Section 3604(c) provides that it is unlawful to "make, print, or publish, or cause to be made,

printed, or published any notice, statement, or advertisement, with respect to the sale or rental of

a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . .

or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

"This prohibition extends to oral statements." *Glagola v. MacFann*, 701 F.Supp.3d 274, 282

(W.D. Pa. 2023) (citing to 24 C.F.R. § 100.75(b)).   Thus, to establish a violation of Section

3604(c), a plaintiff must show that (1) the defendant made a statement; (2) the statement was made

with respect to the sale or rental of a dwelling; and (3) the statement indicated a preference,

limitation or discrimination based on a handicap.   *White v. U.S. Dept. of Housing and Dev.*, 475

F.3d 898, 904 (7th Cir. 2007).   As to the last element, a plaintiff must plausibly allege that "the

defendant made the statement with the actual intent to discriminate, if proof of actual intent exists,

or by [plausibly alleging] that an 'ordinary listener' would naturally interpret the statement as

indicating a preference for or against a protected group or as indicating some other limitation or

discrimination against a protected group."[3] *Fair Hous. Res. Ctr., Inc. v. Djm's 4 Reasons, LTD.*,

---

[3]     Defendants argue that the "ordinary listener" standard is not "well-settled" in the Third
Circuit and should not be applied.   (D.I. 30 at 11, n. 1).   In fact, the Third Circuit has not

499 Fed. Appx. 414, 415 (6th Cir. 2012).   Under the latter standard, also referred to as the "ordinary listener" standard, the Court must consider the context and manner in which the statement was made "and the way an ordinary listener would have interpreted it."   *Soules v. HUD*, 967 F.2d 817, 825 (2d Cir. 1992) (citing *Ragin v. New York Times Co.*, 923 F.2d 995, 1000 (2d Cir. 1991)).   An ordinary listener is "neither the most suspicious nor the most insensitive" citizen. *Ragin*, 923 F.2d at 1002.

Relevant to Plaintiff's and Intervenors' Section 3604(c) claims, Plaintiff and Intervenors allege the following:

### Alden South Hills Apartment Homes

. . . [the leasing agent] responded that the keypad request would have to be approved by the corporate office as an accommodation and that the parking spaces were not assigned and were available only on a first-come, first-served basis. . .

. . .[the leasing agent] stated they could not assign a specific parking spot to one person, but that first-come, first-served "handicapped" parking spots were available in parking structures near two specific units at The Alden that soon would be available . . .

### Cosmopolitan Apartment Homes

. . . The tester asked if it would be possible to reserve a parking spot for her husband close to the entrance of Cosmopolitan. [The leasing agent] responded that they had a couple of handicapped parking spots outside, but that she could not guarantee one would always be

---

yet addressed the pleading requirements for a Section 3604(c) claim. However, the "ordinary listener" standard has been affirmed and utilized for Section 3604(c) claims in the following Circuits: the Second Circuit; *Soules v. United States Dep't of Housing & Urban Dev.*, 967 F.2d 817 (2d Cir. 1992); the Fourth Circuit; *Corey v. Sec'y v. United States HUD*, 719 F.3d 322 (4th Cir. 2013); the Sixth Circuit, *Fair Hous. Res. Ctr., Inc. v. Djm's 4 Reasons, LTD.*, 499 Fed. Appx. 414 (6th Cir. 2012); the Seventh Circuit, *White v. HUD*, 475 F.3d 898 (7th Cir. 2007); the Ninth Circuit; *Ohio House, LLC v. City of Cosa Mesa*, 122 F.4th 1097 (9th Cir. 2024); and the Eleventh Circuit; *Sec'y, HUD v. Collier*, 2019 U.S. App. LEXIS 2102 (11th Cir. 2019).   The Court finds that the authorities are highly persuasive and will likewise apply this standard.   *See also Glagola v. MacFann*, 701 F. Supp. 3d 274 (W.D. Pa. 2023) (applying the "ordinary listener" standard).

open. [The leasing agent] noted that there were also spots inside a garage that could be reserved, but only for a fee.

**Greenspring Apartment Homes**

. . . The tester asked if she and her husband could have a parking space assigned to them near Greenspring's entrance. [The leasing agent] responded that if a resident has a handicapped placard, or plate, Greenspring could put up an "ADA sign." [The leasing agent] also noted that there is a satellite parking lot with many spaces near one of the Greenspring buildings. The tester understood [the leasing agent's] response to mean that assigned parking was not available.[4]

**Livingstone Apartment Homes**

. . . The tester then asked if a parking space could be specifically designated for an apartment tenant. In response, [the leasing agent] said that Livingstone would not be able to reserve a specific handicapped spot, since those spaces were available only on a first-come, first-served basis.

**Liberty Pointe Apartment Homes**

. . . [The leasing agent] then returned to the call and informed the tester that, according to her manager, Liberty Pointe would be able to add a handicapped spot in front of the apartment building, and the tester's husband could use that spot so long as he had a handicapped parking tag. [The leasing agent] clarified, however, that the spot would not be reserved for the tester's husband specifically and that anyone with a handicapped parking tag could use it.

**Hillside Pointe Apartment Homes**

. . . The tester asked if Hillside Pointe could assign them a parking space as close as possible to the apartment unit they might rent, because her husband gets fatigued by walking. [The leasing agent] responded that the property could add another handicapped space, but she noted that the space could not be assigned specifically to her husband and thus anyone with the proper tags would be able to use the spot.

---

[4]       Intervenors' Complaint diverges from the FAC and states: "[t]he tester understood [the leasing agent's] response to mean that Greenspring would not assign a parking space as a reasonable accommodation."   (D.I. 22 ¶ 39).

. . . [The tester then emailed Hillside Pointe,] and wrote: "Hi [leasing agent], I relayed this to my husband and he is still concerned someone's guest or another tenant may park there not realizing that it is meant for him. We appreciate you looking into this for us, but since we cannot get a reserved parking space for him, we won't be able to rent an apartment here." The email went unanswered.

**Hunters Crossing Apartment Homes**

. . . The tester asked whether Hunters Crossing could reserve a parking spot for them as close as possible to the apartment unit they might rent. [The leasing agent] responded that other residents at the property had previously contacted the Delaware Division of Motor Vehicles (DMV) to purchase handicapped spots specifically assigned to their apartment numbers.

. . . The tester asked whether Hunters Crossing could do this without the tester and her husband having to go to the DMV. In response, [the leasing agent] said, "We will not do that."

(D.I. 12 ¶¶ 22-39; D.I. 22 ¶¶ 24-53).[5]

For each Subject Project, the United States and Intervenors have stated a claim under Section 3604(c). Plaintiff and Intervenors have successfully alleged that (1) Defendants, through their agents, made a statement; (2) the statement was made with respect to the sale or rental of a dwelling;[6] and (3) an ordinary listener would interpret the statement to indicate a limitation based on a prospective tenant's handicap. (*See* D.I. 29 at 23 (The FAC "alleges that Defendants' employees consistently and explicitly stated to testers that AION would not grant, or even consider, providing a reserved parking space to testers despite their stated disability-related needs . . ..")).

---

[5]     The allegations appear word-for-word – except for *supra* note 4 – in both in both the FAC and Intervenors' Complaint.

[6]     These statements were made to the testers during conversations about the testers' interest in leasing a unit at each Subject Property. (*See* D.I. 12; D.I. 22).

In response to these allegations, Defendants contend that the alleged statements do not reflect a preference, limitation, or discrimination to rent to nonhandicapped parties, and instead "establish a practice of not reserving a particular[ ] parking spot for any particular individual, whether disabled or not." (D.I. 24 at 22). The Court, however, disagrees. Defendant's statements about the "impossibility" of providing disabled tenants with a reserved parking space could plausibly be construed as discouraging or steering away handicapped persons from pursuing the housing. *See Access Living of Metro Chi. v. Prewitt*, 111 F. Supp. 3d 890, 898 (N.D. Ill. 2015) ("The 'ordinary listener' standard considers only whether a member of the protected class would be discouraged or steered away from pursuing the housing because of the statement."). Indeed, in each of these encounters, the tester expressed that the availability of parking for the disabled tenant would be a decisional factor – i.e., if there was not a guarantee of reserved parking then the disabled tenant and tester would not be able to rent there. The Court also observes that the "ordinary listener standard is 'fact intensive' and requires a 'case-by-case inquiry.'" *Gilead Cmty. Servs. v. Town of Cromwell*, 432 F. Supp. 3d 46, 68 (D. Conn. 2019)) (quoting *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.31 (2d Cir. 2015). As a result, at this stage, the Court is hesitant to draw objective "impression" determinations against Plaintiff and Intervenors; particularly when it is required that all reasonable inferences must be construed in the light most favorable to the nonmovants. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786, at n.2 (3d Cir. 2016). Accordingly, the Court finds that it is reasonable that an ordinary listener would construe Defendants' agents' alleged statements as a limitation based on a person's handicap or disability in violation of Section 3604(c).

Defendants also assert that, to establish a violation under Section 3604(c), Plaintiff and Intervenors must "plausibly plead enough facts to make out three elements: 'refusal, reasonable

accommodation, and necessity/equal opportunity.'" (D.I. 24 at 24 (quoting *Vorchheimer v. Philadelphian Owners Ass'n,* 903 F.3d 100, 111 (3d Cir. 2018)). Defendants argue that, because Plaintiffs and Intervenors have not plead necessity as to the requested accommodation, Plaintiff and Intervenors have failed to state a claim under Section 3604(c). Defendants' argument, however, is misplaced.[7]

The "refusal, reasonable accommodation, and necessity/equal opportunity" standard applies to claims asserted under 42 U.S.C. § 3604(f)(3)(B)) ("Section 3604(f)(3)(B)"), not Section 3604(c). *Vorchheimer,* 903 F.3d at 111. Accordingly, the Court will address those arguments below.

### C.    The FAC and Intervenors' Complaints State Claims Under Section 3604(f)(3)(B)

Next, Defendants argue that Plaintiff United States and Intervenors have failed to state a plausible claim entitling them to relief under Section 3604(f)(3)(B). Under Section 3604(f)(3)(B), it is unlawful to make "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To successfully plead a cause of action under Section 3604(f)(3)(B), Plaintiff and Intervenors must "plausibly plead enough facts to make out the [following three elements]: refusal, reasonable accommodation, and necessity/equal opportunity." *Vorchheimer,* 903 F.3d at 111. Defendants aver that Plaintiff and Intervenors have failed to plausibly allege the aforementioned "reasonable accommodation" and "necessity/equal opportunity" elements. (D.I. 24 at 22, 24- 25; D.I. 26 at 22, 24-25). The Court

---

[7]    In any case, in *Vorchheimer,* the Third Circuit explained that "Plaintiffs need not, and generally do not, plead alternative accommodations" on a motion to dismiss because "[a]ssessing alternatives typically requires a factual record, and developing the factual record requires discovery." 903 F.3d at 111.

disagrees and finds that Plaintiff and Intervenors have stated claims upon which relief can be granted under Section 3604(f)(3)(B).

### 1.    Plaintiff and Intervenors Have Successfully Plead "Refusal"

Defendants do not argue that Plaintiff or Intervenors have failed to establish the "refusal" element.    Rather, Defendants concede that "the facts asserted in the [FAC and Intervenors' Complaint] establish only that the fictious prospective renters' proposed or preferred accommodations *were rejected . . . .*"    (D.I. 24 at 25) (emphasis added).    A rejection, of course, is analogous to a refusal.    *See Revock v. Cowpet Bay West Condominium Assn.*, 853 F.3d 96, 112 (3d Cir. 2017) (explaining the "refusal" element).    The Court finds that Plaintiff and Intervenors have plausibly alleged that Defendants denied their requests for assigned parking spots.    (*See, e.g.,* D.I. 12 ¶¶ 22-39; D.I. 22 ¶¶ 24-53).    Accordingly, the refusal element has been appropriately plead.

### 2.    Plaintiffs and Intervenors Have Successfully Plead a "Request For a Reasonable Accommodation"

Next, Defendants assert that Plaintiff and Intervenors have not established that the testers requested a reasonable accommodation.    (D.I. 24 at 21-22).    The Court disagrees.

The reasonableness of an accommodation is a "highly fact-specific" inquiry that requires a "case-by-case determination."    *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1104 (3d Cir. 1996) (quotation marks omitted).    At this stage in the proceedings, and on the record before it, the Court finds a rational person could infer and plausibly find that an assigned parking space is a reasonable accommodation under Section 3604(f)(3)(b).    *See, e.g., Astralis Condo. Ass'n v. Sec'y, United States Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 68 (1st Cir. 2010) (finding that it was reasonable to conclude Section 3604(f)(3)(b) was violated where a condominium association denied handicapped residents exclusive use of handicapped parking spaces); *see also Jankowski*

*Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996) (upholding an determination that a disabled resident's request to either increase the number of handicap spots or assign him a parking spot constituted a request for a reasonable accommodation).    In fact, contrary to Defendants' assertions, the HUD guidelines state that an assigned parking space can constitute a "reasonable accommodation" under the Fair Housing Act:

> *A resident with a mobility impairment . . . requests an assigned accessible parking space* close to the entrance to her unit as a reasonable accommodation. There are available parking spaces near the entrance to her unit that are accessible, but those spaces are available to all residents on a first come, first served basis. The provider must make an exception to its policy of not providing assigned parking spaces to accommodate this resident.

Joint Statement of Dep't of Hous. & Urban Dev. & Dep't of Justice, *Reasonable Accommodations Under the Fair Housing Act*, at 6 (May 17, 2004).

Considering the above guidance, it cannot be said that an assigned parking space is not a reasonable accommodation.   *See Astralis Condo. Ass'n.*, 620 F.3d at 68.

Although it is true that "[t]he FHA does not create a right to an assigned handicapped space any more than it creates a right to an increase in the number of handicapped parking spaces," a plaintiff is not required to offer or plead every potential reasonable accommodation or solution. *Jankowski*, 91 F.3d at 896.   A plaintiff is only required to establish that she made a request for a reasonable accommodation; and, here, it is patent that a request for an assigned parking space could plausibly be a reasonable accommodation.   *Id.*   The law does not require more.

Therefore, the Court finds that Plaintiffs and Intervenors have plausibly plead that the testers made a request for a reasonable accommodation under the FHA.

### 3.    Plaintiffs and Intervenors Have Successfully Plead "Necessity/Equal Opportunity"

Second, Defendants assert that Plaintiff's and Intervenors' allegations fail to demonstrate "whether Defendants could provide an adequate alternative accommodation to the testers'

proposed or 'preferred' accommodation, and thus, the 'necessity/equal opportunity' factor is missing." (D.I. 26 at 25). Defendants, however, misunderstand the pleading standards for a Section 3604(f)(3)(b) claim.

The Third Circuit explained in *Vorchheimer*:[8]

> We do not require plaintiffs to hypothesize alternatives, let alone to preempt hypotheticals. Nor do we change how courts should treat these claims, including the necessity element, on a motion to dismiss. To survive a motion to dismiss, a plaintiff need only plausibly plead enough facts to make out the three elements set forth in § 3604(f)(3)(B): refusal, reasonable accommodation, and necessity/equal opportunity.

> Plaintiffs need not, and generally do not, plead alternative accommodations. So, ordinarily, district courts do not have alternatives before them on a motion to dismiss. Assessing alternatives typically requires a factual record, and developing that factual record requires discovery.

903 F.3d at 111.

Accordingly, at the motion to dismiss stage and contrary to Defendants' assertions, Plaintiff and Intervenors are not required to plead alternative accommodations. Plaintiff and Intervenors do not need to "hypothesize" that other accommodations could have satisfied their needs. *Id.* Instead, Plaintiff and Intervenors must plausibly allege that "an accommodation be essential, not just preferable." *Id.* at 108 (defining "necessity"); *see also id.* at 105 (stating that

---

[8]    In *Vorchheimer*, the Third Circuit did address alternative accommodations on a motion to dismiss because Plaintiff "specifically pleaded the four alternative accommodations in her complaint." *Id.* at 111 (the Third Circuit remarking that "this is not an ordinary case"). Therefore, the Third Circuit was able to consider contradicting allegations without going outside the pleadings. *Id.* at 112. Here, however, neither Plaintiff nor Intervenors have plead that the testers made requests for alternative accommodations. Rather, the testers appeared steadfast in their requests for assigned parking spaces. Therefore, the Court will not speculate and reach outside the pleadings to determine whether alternative accommodations existed.

"the statutory text [of the FHA] requires that an accommodation be essential to achieve equal housing opportunity, measured against any alternatives that were offered.").

Here, it is alleged that the testers expressed to the leasing agents that an assigned parking space would be necessary:

### Alden South Hills Apartment Homes

. . . The tester informed Angela that she was looking for a rental unit for herself and her sister, and that her sister has a disability and would ***need*** a parking spot close to the entrance . . .

### Cosmopolitan Apartment Homes

. . . The tester informed Janine that her husband had a disability, he at times used a walker, and was ***unable to walk more than 100 feet without needing to rest***. The tester asked if it would be possible to assign her husband a parking space near the entrance of the building. . .

### Greenspring Apartment Homes

. . .The tester said that she and her husband were looking to rent an apartment, but she informed Janette that her husband has a disability that limits his mobility, that he sometimes uses crutches or a walker, and that ***he is limited to walking 100 feet***. The tester asked if she and her husband could have a parking space assigned to them near Greenspring's entrance . . .

### Livingstone Apartment Homes

. . .The tester then explained that they were calling on behalf of their nephew, who has ***difficulty walking*** due to an auto accident. . .

### Liberty Pointe Apartment Homes

. . .The tester explained that her husband ***has a physical disability, uses a walker, and has difficulty walking long distances***.

The tester asked Jo if Liberty Pointe could assign a parking spot to her husband ***as near as possible*** to the entry of the building with an upcoming vacancy, regardless of whether the space was labeled as a handicapped space or not . . .

**Hillside Pointe Apartment Homes**

. . .The tester noted that her husband had a physical disability *requiring the use of a cane, crutches, and a walker*. The tester asked if Hillside Pointe could assign them a parking space as close as possible to the apartment unit they might rent, because her *husband gets fatigued by walking*. . .

. . . [the tester emailed the leasing agent] since we cannot get a reserved parking space for him, we won't be able to rent an apartment here . . .

**Hunters Crossing Apartment Homes**

. . .The tester explained that her husband *has a physical disability and uses crutches and a walker, and that walking far distances makes him very fatigued*. . .

The tester then explained that she and her husband did not need a parking space designated as accessible but instead simply *needed* a spot reserved for them. . .

(D.I. 12 ¶¶ 22-39; D.I. 22 ¶¶ 24-53) (emphasis added).

The Court finds that the above allegations are sufficient, at the motion to dismiss stage, to plausibly infer that the requested reasonable accommodation of an assigned parking space was necessary. Indeed, the testers' explanations of each tenant's disability either indicates or directly states that an assigned parking space is not merely "preferable," but rather is essential "to afford [that person] with a disability an equal opportunity to use and enjoy the dwelling of his or her choice." *United States v. Dorchester Owners Ass'n.*, C.A. No. 20-1396, 2022 U.S. Dist. LEXIS 50586, at *13-14 (E.D. Pa. Mar. 22, 2022) (citing to *Vorchheimer*, 903 F.3d at 107). The Court also finds that the requested accommodation, of an always-guaranteed assigned parking space is plausibly "essential to achieve equal housing opportunity." *Vorchheimer*, 903 F.3d at 105. "[A]n accommodation that does not provide *equal* opportunity, or that provides equal opportunity to use but not to *enjoy*, will not satisfy the [necessity/equal opportunity] element." *Vorchheimer*,

903 F.3d at 109 (explaining that the third element of necessity/equal opportunity may "require more 'than just those accommodations that are absolutely necessary for the disabled individual's treatment or basic ability to function.'") (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338, 361 (6th Cir. 2015). Thus, it is reasonable to conclude that the requested assigned parking spaces were necessary to provide the disabled prospective tenants with an equal opportunity to enjoy the Subject Properties.

Accordingly, the Court finds that Plaintiff and Intervenors – through their nearly identical allegations – have satisfied the third element. The Court, therefore, concludes that Plaintiff and Intervenors have successfully stated a claim entitling them to relief under Section 3604(f)(3)(B).

### D.    **Dismissal with Prejudice is Not Appropriate**

Last, Defendants argue that the FAC and Intervenors' Complaint should be dismissed with prejudice because amendment of either complaint would be futile. (D.I. 24 at 26; D.I. 26 at 26). As explained herein, the Court finds that Plaintiff and Intervenors have Article III standing and that Plaintiff and Intervenors have properly plead claims under Sections 3604(c) and 3604(f)(3)(B) of the FHA. In finding so, the Court denies Defendant's Motions to Dismiss. Therefore, Defendants' arguments regarding dismissal with prejudice are moot.

## IV.    **CONCLUSION**

For the reasons explained above, Defendants' Motion to Dismiss Plaintiff's Amended Complaint (D.I. 23) is denied and Defendants' Motion to Dismiss Plaintiff-Intervenors' Complaint (D.I. 25) is denied. The Court will enter an Order consistent with the rulings contained in this Memorandum Opinion.